UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CABALLERO A.,[1]<br>Petitioner,<br>v.<br>TONYA ANDREWS, et al.,<br>Respondents. | No. 1:26-cv-02264-TLN-SCR<br>A# 205-156-624<br>**ORDER** |

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) and Motion to Enforce the Temporary Restraining Order ("TRO") (ECF No. 8). Petitioner is represented by counsel. The matters are fully briefed. (ECF No. 7, 11, 12.) For the reasons set forth below, the Court GRANTS the Petition and DENIES the motion to enforce.

///

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

This matter arises out of Petitioner's civil immigration detention in March 2026. In 2009, Petitioner entered the United States without encountering immigration authorities. (ECF No. 1-3 at 2.) Petitioner later encountered immigration authorities in the interior of the country in 2013; they detained him, initiated removal proceedings against him, and then released him on his own recognizance. (ECF No. 7 at 11.) In 2014, an immigration judge administratively closed Petitioner's immigration case because the government elected to dismiss the case, exercising prosecutorial discretion. (*Id.*; ECF No. 1-3 at 2.) For the last seventeen years, Petitioner has lived continuously in the United States, and he has built a life here. (ECF No. 1-3 at 2.) He is the primary provider for his two children. (*Id.*) He established a business and maintained a stable residence. (*Id.*) Petitioner's only criminal history relates to charges for driving under the influence. (*Id.*; ECF No. 7 at 11, 14–19.)

On March 9, 2026, Petitioner was on his way to work when U.S. Immigration and Customs Enforcement ("ICE") officers stopped him in front of his home and arrested him. (ECF No. 1-3 at 3.) Petitioner states the officers did not show him a warrant or explain why he was being arrested, even though government records show his arrest was targeted. (*Id.*; ECF No. 7 at 11.) After his arrest, Petitioner states he was not given any opportunity to contest his detention, nor was he provided a bond hearing. (ECF No. 1-3 at 3; ECF No. 1 at 5.) Respondents have reinstituted removal proceedings against Petitioner, which remain pending.[2]

On March 23, 2026, Petitioner filed the instant Petition and a motion for TRO claiming that his detention without a hearing was unlawful. (ECF Nos. 1, 2.) The next day, the Court found Petitioner was likely to succeed on his claims and issued a TRO ordering Petitioner's immediate release from custody, under the same conditions as he was released prior to his current detention, and enjoining Respondents from re-detaining Petitioner absent seven days' notice and a pre-deprivation hearing. (ECF No. 4.) On March 25, 2026, Petitioner was released from detention on an order of release on recognizance. (ECF No. 7 at 2, 21–25.)

---

[2] Automated Case Information, U.S. Department of Justice, Executive Office for Immigration Review, https://acis.eoir.justice.gov/en/caseInformation.

On May 22, 2026, after pre-deprivation notice and hearing, ICE re-detained Petitioner. (ECF No. 11 at 2.) An immigration judge held a hearing on May 19, 2026, at which Petitioner did not appear, and found Petitioner to be a danger and a flight risk. (*Id.* at 15–18.) According to the immigration judge, Petitioner was served with notice of the hearing on May 1, 2026. (*Id.* at 17.)

On June 11, 2026, Petitioner filed a Motion to Enforce the Court's TRO seeking Petitioner's release, claiming that Respondents had imposed new conditions on Petitioner (between Petitioner's March 25 release and his May 22 re-detention) in violation of the TRO. (ECF No. 8.)

The Court now resolves the merits of the Petition as to Petitioner's March detention, as well as the motion to enforce TRO regarding the conditions of Petitioner's release. This Order does not address the lawfulness of Petitioner's current detention because no challenge has been properly raised before this Court.

## II. Petition for Writ of Habeas Corpus

### A. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

///

///

B. Analysis

Petitioner claims his detention without a hearing violates 8 U.S.C. § 1226(a) and the Fifth Amendment Due Process Clause.[3] (ECF No. 1 at 9–12.) Respondents argue Petitioner is subject to mandatory detention without a hearing under 8 U.S.C. § 1225(b)(2) and that the Petition is moot because Petitioner was released under the TRO. (ECF No. 7.)

As an initial matter, the Petition is not moot. The Court previously granted only temporary relief pending final resolution on the merits of the Petition. (ECF No. 4.) Respondents' assertion misunderstands the nature of preliminary relief. Unless Respondents mean to concede Petitioner's detention was unlawful, the Petition remains unresolved.

*i. 8 U.S.C. § 1226(a) and 8 U.S.C. § 1225(b)(2)*

As to Petitioner's statutory claim, the Ninth Circuit has rejected Respondents' application of 8 U.S.C. § 1225(b)(2) to persons like Petitioner. *Rodriguez Vazquez v. Bostock*, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). The mandatory detention scheme of § 1225(b)(2) applies only to noncitizens entering the United States at the border. *Id.* at *10. In contrast, individuals like Petitioner who are "present without admission who are apprehended in the interior of the United States" are subject to discretionary detention under 8 U.S.C. § 1226(a). *Id.* at *3.

Section 1226(a) provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). Additionally, § 1226(a) requires an administrative warrant issued prior to arrest, unless an exception applies. 8 U.S.C. § 1226(a); *see also* 8 C.F.R. § 1236.1(b)(1) ("[A noncitizen] may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest."); *Trevor J.M. v. Warden of the Cal. City Det. Facility*, No. 1:26-CV-04364-TLN-CSK, 2026 WL 2410039, at *2 (E.D. Cal. Aug. 18, 2026);

---

[3] Finding relief warranted under Petitioner's statutory and Fifth Amendment procedural due process claims, the Court declines to address Petitioner's additional claims in favor of judicial economy.

*Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)").

Here, Respondents arrested Petitioner without a warrant even though the arrest was pre-meditated and ICE officers went to his house to detain him. (ECF No. 7 at 11.) Respondents make no argument as to why the warrant requirement should not apply here. (*See id.*) Additionally, on the record before this Court, it appears that Petitioner was never given an initial custody determination, nor a custody re-determination hearing. *See Zurita Navarro* v. *Warden Ctrl. Valley Annex Det. Facility*, No. 1:26-CV-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026) (enumerating procedural violations of § 1226(a), including "failure to provide the petitioner with an initial custody determination either prior to or contemporaneously with detention," and collecting cases). Therefore, Petitioner did not receive the procedural safeguards statutorily owed to him in the course of his detention and Respondents violated 8 U.S.C. § 1226(a).

*ii. Fifth Amendment Procedural Due Process*

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas,* 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*a) Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."

*Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). An individual's liberty interest may be strengthened over time. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).

Petitioner has a clear liberty interest in remaining free from detention. "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Morrissey*, 408 U.S. at 481–82). Petitioner has lived in the country for about seventeen years, during which time he has established a residence, created a business, and started a family. Additionally, over twelve years ago, the government exercised prosecutorial discretion in closing Petitioner's removal proceedings and let him live at liberty in the community for over a decade. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987)) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). Accordingly, Petitioner has a clear interest protected by the Due Process Clause.

*b) Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner was detained, separated from his community and family, and unable to work. Accordingly, Petitioner's private interest was impacted by his detention. *See*

*Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD, 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is significant given the utter lack of procedural safeguards given to Petitioner in his detention. As already discussed above, Respondents did not provide Petitioner with the process owed to him under 8 U.S.C. § 1226(a) and thus violated their own statutes during Petitioner's detention. *See Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003) ("ICE, like any agency, 'has the duty to follow its own federal regulations.'"); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (reversing dismissal of habeas petition where Board of Immigration Appeals failed to follow its own regulations). Therefore, the Court finds the probative value of additional procedural safeguards here is high.

Additionally, because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner is not subject to any order of removal. In 2013, immigration authorities necessarily determined Petitioner was not a danger to the community or a flight risk to release him on his own recognizance. 8 C.F.R. § 1236.1(c)(8). Similarly, in 2014, it is reasonable to infer that the government would have agreed with that finding when they exercised prosecutorial discretion to close his removal proceedings, which had the effect of letting him live at liberty in the community without supervision. At the time of Petitioner's March detention, there was no alternate finding in the record. Indeed, since his removal proceedings were closed, Petitioner lived over a decade in the community without acquiring any criminal convictions. (*See* ECF No. 7.) Thus, the risk that Petitioner was detained in March without proper justification was high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, and finally, the government's interest in detaining Petitioner without any hearing is nil, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards. And the government has no interest in detaining persons in violation of their own statutes. Notice and custody determination hearings are routine processes for Respondents and are indeed the very processes required under § 1226(a). Moreover, any delay in detention (if justified) for the time to provide pre-deprivation notice and a hearing would have been minimal. Any burden associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Nor do Respondents make any claim that they would be unduly burdened.

Under the *Mathews* factors, Respondents were required to provide notice and a pre-deprivation hearing before a neutral decisionmaker. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (finding, generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property.") (emphasis in original). However, Respondents did not provide Petitioner with any notice or any custody hearing as it relates to his March 2026 detention. Therefore, Respondents clearly violated the Fifth Amendment and Petitioner's procedural due process rights.

## III. Motion to Enforce the TRO

### A. <u>Standard of Law</u>

Federal courts have inherent authority to enforce their own orders, including those granting injunctive relief in habeas actions. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."). A motion to enforce judgment is the "usual method" for requesting a court interpret its own judgment and compel compliance. *California by & through Becerra v. Dep't of the Interior*, No. 17-cv-5948, 2020 WL 13093994, at *3 (N.D. Cal. July 30, 2020) (citing *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)).

To prevail on a motion to enforce an injunction, "[t]he moving party has the burden of

showing by clear and convincing evidence that the enjoined party violated a 'specific and definite order of the court.'" *Kia Am., Inc. v. Rally Auto Grp., Inc.*, No. 8:22-CV-00109-JVS-JDE, 2022 WL 17185011, at *2 (C.D. Cal. Oct. 20, 2022) (quoting *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)). If petitioner received all relief required by the court's prior judgment, the motion to enforce should be denied. *Heartland Hosp.*, 328 F. Supp. 2d at 11. But if petitioner demonstrates respondent "has not complied with a judgment entered against it, even if the noncompliance was due to misinterpretation of the judgment," the motion shall be granted. *Id.*

B. Analysis

In its TRO, the Court ordered Respondents, in relevant part, to release Petitioner "under the same conditions he was released prior to his current detention." (ECF No. 4.) Petitioner was then released on an Order of Release on Recognizance ("OREC"). (ECF No. 7 at 21–25.)

Petitioner argues Respondents imposed extra conditions that did not mirror his prior release, namely enrollment in the Alternatives to Detention ("ATD") program, electronic monitoring, and mandatory ICE reporting and check-ins.[4] (ECF No. 8 at 2; ECF No. 12 at 2.) Petitioner seeks release from custody on this basis, but he does not meaningfully argue that his re-detention violated the TRO, nor does he argue that the purported additional conditions caused his re-detention. (*See* ECF Nos. 8, 12.)

Respondents point to the OREC and argue that Petitioner's release mirrored his prior release from immigration custody. (ECF No. 11 at 2.) Respondents also argue that Petitioner was re-detained in compliance with the TRO.[5] (*Id.*)

The parties agree that Petitioner was not previously enrolled in the ATD program, but disagree as to whether Petitioner was placed in the ATD program (including the electronic

---

[4] Petitioner first raised this dispute with Respondents the day after Petitioner was released on March 26, 2026. (ECF No. 8 at 2.) However, neither party sought clarification from this Court as to the appropriate conditions of release. It was not until Petitioner was re-detained, months later, that he filed this motion to enforce to challenge the conditions of his release. (*Id.*)

[5] Because Petitioner does not argue or claim his May re-detention was unlawful, any such claim is not properly before this Court, thus, this Order does not reach Petitioner's current detention. Nothing in this Order precludes Petitioner from filing a separate habeas petition to challenge his current detention if he has a basis to claim it is unlawful.

monitoring and other restrictions) upon his March 2026 release. (ECF Nos. 11, 12.)

As evidence of the extra terms imposed, Petitioner points to the OREC itself, specifically the terms listed under the "Other" header in the order, which mandate ATD enrollment, electronic monitoring, and curfew. (ECF No. 12 at 3.) However, the OREC form clearly shows the "Other" terms are not checked off (as shown in the excerpt below):

> ☒ You must not change your place of residence without first securing written permission from the officer listed above.
>
> ☒ You must not violate any local, State or Federal laws or ordinances.
>
> ☒ You must assist Immigration and Customs Enforcement in obtaining any necessary travel documents.
>
> ☐ Other: *Your release is contingent upon your enrollment and successful participation in an Alternatives to Detention (ATD) program as designated by the U.S. Department of Homeland Security. As part of the ATD program, you will be subject to electronic monitoring and may be subject to a curfew. Failure to comply with the requirements of the ATD program will result in a redetermination of your release conditions or your arrest and detention.*

(ECF No. 7 at 21.) Thus, those terms did not apply to Petitioner's release, and he was not subjected to those additional terms. Petitioner provides no further evidence to support a finding that Petitioner was subjected to ATD, electronic monitoring, or additional conditions. Therefore, Petitioner has not carried his burden to show by clear and convincing evidence that Respondents violated the TRO and the motion to enforce the TRO is denied.

### C. CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. The Petition for Writ of Habeas Corpus is GRANTED. (ECF No. 1.)
2. Respondents' Motion to Dismiss the Petition is DENIED. (ECF No. 7.)
3. The Motion to Enforce TRO is DENIED. (ECF No. 8.)
4. The Motion to Expedite Consideration of the Motion to Enforce (ECF No. 13) is also denied as moot with the issuance of this ruling.
5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: September 21, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE